## City of Chicago v. Frank Gillett.

1. MUNICIPAL CORPORATIONS—*Duty as to Sidewalks.*—It is the duty of municipal officers to use ordinary care in keeping sidewalks in a safe condition for travel, and this duty involves the anticipation of such defects as are the natural and ordinary results of use and climatic influences; and where there is neglect on the part of the proper officer to

make sufficiently frequent examinations of particular structures the municipality will not be relieved from liability for the reason that the defect was not open and notorious.

2. PRACTICE—*Allegations and Proofs—Constructive Notice.*—An allegation in a declaration for personal injuries, of actual knowledge on the part of a municipal corporation of a defective sidewalk, is sufficiently proved by evidence showing that the unsafe condition of the sidewalk had existed for such a length of time before the injury complained of, that the municipal authorities might have discovered it by the use of reasonable diligence.

3. DAMAGES—*When $11,000 is Not Excessive.*—A stone cutter by trade, strong and healthy, forty-four years of age. engaged in repairing grips and earning from $70 to $75 per month, sustained a severe injury in falling through the sidewalk approach to a viaduct on a street in Chicago, which fall resulted in a rupture in the neighborhood of twenty-three inches in circumference, with a tendency to increase in size, and with danger of strangulation. There was evidence showing that the hernia was entirely irreducible and that surgeons refused to operate upon him for fear it would cause his death. A verdict of $11,000 was returned in his favor, which the Appellate Court declined to disturb because of its amount.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed October 4, 1900.

ANDREW J. RYAN, JOHN E. KEHOE and JAMES J. KELLY, attorneys for appellant.

SULLIVAN & MCARDLE and V. S. LUMLEY, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

July 17, 1897, appellee sustained a severe rupture from falling through the sidewalk approach to a viaduct on Sixty-first street, Chicago, brought suit against appellant to recover damages for his injury, a trial of which resulted in a verdict of not guilty, which was set aside, and upon a second trial recovered a verdict and judgment thereon for $11,000, from which this appeal is taken.

It is first contended on behalf of appellant that its motion, made at the close of the plaintiff's evidence, for

City of Chicago v. Gillett.

an instruction directing the jury to find a verdict of not guilty, which was overruled, and renewed at the close of all the evidence and again overruled, should have been allowed. In this connection it is argued that the evidence fails to show actual knowledge by the appellant of the condition of the sidewalk in question before the injury, or that the defect had existed for such a length of time before the accident that the knowledge of the same could correctly be imputed to the appellant.

The first and second counts of the declaration charge that defendant for, to wit, the space of forty-eight hours and upward, wrongfully and negligently suffered and permitted the said sidewalk to be and remain in an unsafe condition and bad repair, etc., the defendant well knowing the same. The third count alleges that the sidewalk consisted of planks or boards that had laid down upon timbers for many years, which boards or planks had become and were, with the timbers underneath, decayed and rotten. It is said that under the first and second counts it was incumbent upon the plaintiff, before he could recover, to show actual knowledge of the condition of the sidewalk. This contention can not be maintained, as has been held by the Supreme Court in LaSalle v. Porterfield, 138 Ill. 114, in which it is said that a like allegation "is sufficiently proved by evidence that the insufficient and unsafe condition of the bridge had existed for such a length of time before the injury complained of that the municipal authorities of that city might have discovered it by the use of reasonable diligence."

To the same effect is City of Springfield v. Doyle, 76 Ill. 202.

The evidence is to the effect, in substance, that the sidewalk at the place where the accident happened appeared on the surface to be in good condition, but that the stringer on which the planks rested was so decayed and rotten that when the plaintiff stepped upon the end of a plank near the middle of the walk (the planks at the place in question running lengthwise the walk and being supported by stringers

underneath and crosswise) it gave way because of the rotten condition of the stringer, and plaintiff fell through the full length of his leg, and sustained the injury for which the suit is brought. The evidence also is entirely sufficient to have justified the jury in finding that the plank in question had been loose and that the rotten condition of the stringer had existed for from two to three weeks and upward prior to the accident. The walk was five or six feet above ground, and was therefore in a position to be readily and easily inspected. If the appellant did not know of the condition of the walk, this evidence justified the jury in finding that if the walk's condition was not known to the city authorities, it could and should have been known had they exercised ordinary care in the examination and inspection thereof. It is true, there is evidence that police officers whose duty it was to report defects in sidewalks, and who passed over this particular walk daily or oftener, testified that they did not discover anything wrong with it, but there is no evidence that there was any inspection of the walk made by the city authorities. That the walk was in a positively bad condition may be inferred, aside from the evidence of plaintiff's witnesses, from the fact, which appears from defendant's evidence, that it was relaid within less than two months after the date of the accident. From this evidence, as well as that on behalf of the plaintiff showing that the stringer was decayed and rotten, the jury had the right to infer, and such inference would seem to be entirely reasonable, that the walk had been constructed for a long time before the accident. If the walk had been so constructed, the natural and ordinary result might have reasonably been expected, viz., that the wood of which it was constructed would be more or less decayed. It was the duty of the city to have anticipated this result, and to have examined the walk to ascertain its condition. Such examination, even the most casual, from underneath, would have revealed the dangerous condition of the walk.

In the Porterfield case, *supra*, p. 119, the court say:

" It is the duty of municipal officers to use ordinary care in

keeping its bridges, culverts, etc., in a safe condition for travel, and this involves the anticipation of defects that are the natural and ordinary results of use and climatic influences; and so wherever there is neglect on the part of the proper officer to make a sufficiently frequent examination of a particular structure, a municipality will not be relieved from liability, although the defect may not be open and notorious." (Citing Elliott on Roads and Streets, 462, Stebbins v. Keene, 55 Mich. 552, and City of Sterling v. Merrill, 124 Ill. 522.)

The court on behalf of the plaintiff gave the following instruction, which it is claimed was error, to wit:

"The court instructs the jury that a person passing over a sidewalk or street is not bound to exercise more than reasonable care and caution with respect to his own safety. Until he is charged with notice to the contrary he has a right to presume the same to be in a reasonably safe condition."

The contention is answered by the Supreme Court in the case of The City of Beardstown v. Smith, 150 Ill. 169–73, where it is said that there was no material error in a like instruction.

The only remaining contention for appellant is that the damages are excessive. The evidence shows that plaintiff has sustained a most serious and permanent injury—a rupture which he says "is in the neighborhood of twenty-two inches around"—from which he had suffered all the time up to the trial (which was about two and one-half years after his injury) day and night, and which had to be supported by a leathern bag or pouch, and rendered him unable to perform manual labor of any consequence. Three experienced physicians and surgeons, on behalf of plaintiff, one of whom treated him for the injury, testified to its nature and extent, stating that the rupture was from twenty-three to twenty-six inches in circumference. ˙ The one who treated him said that plaintiff's condition had gradually become worse, that the hernia was entirely irreducible, and plaintiff was much reduced in weight. Another, Dr. Ferguson, testified that plaintiff was an invalid and that the tendency of the rupture was to get larger, and there was danger of strangulation;

that he would positively refuse to operate upon him for fear it would cause his death; that witness had operated on over five hundred cases of hernia; that plaintiff was incapable of performing manual labor. The other surgeon, Dr. St. John, testified that he believed an operation would result in plaintiff's death; that he believed that plaintiff suffered pain all the time except when he was unconscious from sleep; the witness, who had seen over a thousand hernias, said this was "the largest in that neighborhood I have ever seen;" that it was about the size of his head—containing intestines.

No evidence was offered on behalf of appellant as to the nature or extent of appellee's injury.

Plaintiff was forty-four years of age at the time of the trial, was a stone cutter by trade, had worked as a horse-car driver and gripman, and at the time of his injury was working at the repairing of grips, which weighed from 525 to 550 pounds. He was in the habit of lifting around these grips with the assistance of one man, and was necessarily a strong man. He weighed, before the injury, 300 pounds, and was earning from $70 to $75 per month. At the time of the trial his weight was considerably reduced, but what it was does not appear. He suffered a slight hernia twenty-two years before the trial, at a different place from the one in question, but which never gave any serious trouble, and never affected his ability to work as a gripman, car driver or repairer of grips.

We think, after the most careful consideration of the evidence, especially in view of the fact that it has received the sanction of the honorable trial judge, that the judgment should not be disturbed because of its amount.

It not being claimed that there was error in any respect except as above stated, the judgment of the Circuit Court is affirmed.